UNITED STATES of America,
Libellant,

v.

ONE 1956 MODEL FORD 2-DOOR CUS-
TOMLINE AUTOMOBILE, Motor
No. U6UG187538.

Civ. No. 510.

United States District Court
E. D. North Carolina,
Fayetteville Division.

Dec. 20, 1957.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for plaintiff.

Murray G. James, Wilmington, N. C., for intervening petitioner.

GILLIAM, District Judge.

In this case the intervening petitioner seeks the remission to the extent of its interest of the forfeiture of an automobile found in violation of the Internal Revenue laws relating to liquors. The facts of the case appear as follows:

Cleveland Carter purchased the automobile in question from Clark Motor Company on September 1, 1956, and at that time gave a note and conditional sales contract on the automobile to Clark Motor Company. Clark Motor Company executed an assignment of the note and conditional sales contract in question to the petitioner, Wachovia Bank & Trust

Company, dated September 1, 1956, and forwarded both the note and the conditional sales contract to the petitioner in Wilmington, North Carolina. The Bank received the note and the conditional sales contract on or about September 6, 1956. Upon the receipt of the note and the conditional sales contract the Bank remitted an advance to Clark Motor Company and at the same time wrote letters to the various law enforcement agencies requesting information as to whether or not Cleveland Carter had any liquor violation record or reputation as well as making the usual credit and reputation check. On or about September 10, 1956, the Sheriff of Robeson County replied, in answer to the inquiry, that on October 26, 1952 Cleveland Carter was convicted of speeding. Upon the evidence presented, the Court finds that in fact Carter did have a record or reputation for violating the State liquor laws at the time of the events herein described, and further finds that at the time referred to in the Libel of Information, the 1956 Model Ford, above described, was being used by Cleveland Carter, registered owner, in violation of the Internal Revenue Laws. Subsequent to the receipt of the Sheriff's letter, but prior to Carter's instant violation of the Internal Revenue Laws, the Bank purchased the note and conditional sales contract in the manner set forth below.

Prior to and during the events described above the Bank had a long standing written agreement with Clark Motor Company to the effect that no sale of an automobile purchaser's note and conditional sales contract was to become final until the expiration of a reasonable length of time. This period of time was established to enable the Bank to determine the quality of the paper in connection with its decision as to whether or not to purchase the same. In the event that the Bank refused to purchase a particular note, any advance to the dealer upon receipt of the note by the Bank was returned to the Bank. At no time was the Bank under any legal compulsion to forward an advance to the dealer upon the receipt of a purchaser's note. The practice of forwarding an advance at once is the outgrowth of the character of automobile dealers' system of financing. Frequently the dealer, upon the sale of a car, needs immediate funds in order to release the car from its position as security under a floor-planning scheme, or to replace the dealer's inventory.

The conditions precedent to the remission or mitigation of forfeiture under the liquor laws are set forth in 18 U.S.C.A. § 3617(b). Briefly, these conditions, as applied to the present case, are that (1) the petitioner have an interest in the automobile acquired in good faith; (2) the petitioner have no knowledge or reason to believe that the automobile would be used in the violation of federal or state liquor laws; and (3) the petitioner, prior to acquiring its interest, be informed in answer to its inquiry at the headquarters of the principal local or federal law enforcement officer of (A) the locality in which the automobile purchaser bought the car, (B) the locality in which the automobile purchaser resided, and (C) each locality in which credit inquiry is made, that the automobile purchaser had no record or reputation for violating State or Federal liquor laws. It is not contended by the Government that the petitioner did not acquire its interest in good faith or that it had knowledge or reason to believe that the libelled vehicle would be used in violation of the liquor laws.

It is conceded that inquiry was made of the proper officers in the proper localities, but it is contended that the reply of the Sheriff of Robeson County does not constitute an information to the effect that Carter did not have a record or reputation within the locality. With this the Court cannot agree. Where a specific inquiry as to record or reputation is directed to a law enforcement officer, and a reply is received from the same indicating that the inquiry was received and considered, the failure to report any record or reputation while listing other law violations can only be taken to mean that no such record or reputation existed.

Therefore, the petitioner in the present case has fulfilled the conditions precedent to remission of forfeiture provided the information in response to the petitioner' inquiry was received prior to the time the petitioner acquired its interest.

The instant transaction between the Bank and the automobile dealer, Clark Motor Company, appears to have been a sale on approval. The note and conditional sale contract involved were submitted to the Bank for purchase, and the Bank had a reasonable length of time in which to determine the quality of the paper before deciding to accept or reject the offer of sale of the note. Because of the character of the continuous transactions between the dealer and the Bank, acceptance was to be signified by silence—a failure on the part of the Bank to manifest a rejection of the submitted offer within a reasonable length of time.

 With regard to sale on approval, Williston on Contracts, Abridged Edition, Section 722, states as follows: "The approval of the buyer may be a condition precedent to the transfer of title * * * it makes little difference what language the parties use since it is their manifestation of intention, evidenced by the whole contract, which determines their rights." It seems clear that the law of North Carolina recognizes a sale on approval, and when by the contract between the vendor and vendee the goods are to be examined, or inspected, or, in other words, approved by the vendee, title does not vest in the vendee until such approval is manifested. Elliott v. Southern Railroad Co., 155 N.C. 235, 71 S.E. 339; Glascock v. Hazell, 109 N.C. 145, 13 S.E. 789; Devane v. Fennell, 24 N.C. 36. It is, therefore, clear that until the Bank approved the instant note and conditional sales contract (by failing to reject the same within a reasonable length of time) no title passed and no interest in the car was acquired by the Bank.

But the Government contends that although legal title did not pass until approval was manifested by the vendee, the petitioner in the instant case acquired an interest in the note and the conditional sales contract (and hence the car) through a legal option to buy or otherwise, when the petitioner, upon the receipt of the note and conditional sales contract, remitted an advance to the dealer. It appears to the Court that this argument is without merit under the following reasoning.

The advance to the Bank was not made in consideration of the dealer's giving up his right to withdraw his offer to sell the note; hence it cannot be said that upon the payment of the advance the Bank acquired an interest in the automobile termed in law an option to purchase. Prior to approval by the Bank, the dealer could withdraw his offer to sell the note, and this is true whether or not any advance was made at the time the note was submitted to the Bank. Until the approval of the note and the consequent acceptance of the offer to sell the same, neither the dealer nor the Bank was under any enforceable obligation with regard to the note and conditional sales contract in question. That the dealer would have had to return the advance if the Bank rejected the note stems from the fact that until the Bank approved and accepted the note, no consideration was given by the dealer for the advance. In other words, the dealer's obligation to return the advance and the Bank's right to the same upon the latter's failure to accept the note stems from the complete absence of a transfer of any interest in the note and conditional sales contract as consideration for the advance; it is predicated upon the fact that no contractual relationship has become binding upon the parties. Until approval of the note and conditional sales contract the Bank had no interest in the same, but only an interest in the advance to the dealer which existed because until that time nothing had been transferred in consideration for the same to the Bank.

The following comment appears in 46 American Jurisprudence, Sec. 493, headed "Passing of Title": "Contracts for sale on trial or approval are construed to mean that title shall continue in the seller until the sale has become absolute ei-

ther by the buyer's approval of the goods or by his failure to comply with the express or implied conditions of the contract as to giving notice of dissatisfaction or as to returning the goods—title does not vest in the buyer under a sale on approval before he exercises his option to accept the goods merely because he paid the purchase price upon receiving the property. In the case of a sale and approval title remains in the seller even as against bona fide purchasers for value from the buyer". It seems hardly necessary to say that the word "option" in the above quotation does not mean the vendee's right to have an offer submitted or remain open to him, but rather his right to accept or reject an offer which has been submitted to him without consideration extended for the same. It in no way implies that the advance of the purchase price is the consideration for a legal option not theretofore possessed by the vendee.

In view of the above, it is the opinion of the Court that the petitioner acquired its interest in the instant automobile on or about September 26, 1956; approval of the note and conditional sales contract and acceptance of the offer for the sale of the same being manifested about that time by the Bank's failure to return the same to the dealer prior to the expiration of a reasonable length of time. The Bank's interest was acquired after fully complying with the conditions precedent to the remission or mitigation of forfeiture.

It is, therefore, Ordered, Adjudged and Decreed that the one 1956 Model Ford 2-Door Automobile, Motor Number U6UG187538, be and the same is hereby condemned and forfeited to the United States of America for the cause set up in the Libel herein, and it is,

Further Ordered, Adjudged and Decreed that the United States Marshal for the Eastern District of North Carolina be authorized and empowered, and he is hereby directed, to sell said property at public auction, after due notice and advertisement as required by law, and that from the proceeds of said sale the said United States Marshal pay all expenses of seizure, storage charges and all other fees in connection with the charges of said sale and the Court costs, not to include Attorney's Docket Fees, and after payment of said charges, fees, expenses and Court costs, pay to Wachovia Bank & Trust Company, Wilmington, North Carolina, the sum of $1,495.04, and after said sums are paid, pay any balance remaining thereof into the Treasury of the United States.